UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRIAN GRIMALDI,

       Plaintiff,

   v.

CORIZON, INC., f/k/a
CORRECTIONAL MEDICAL SERVICES,
INC., and ANNIE GREY,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 10-1686
(JEI/JS)

**OPINION**

DAVID P. SCHROTH, ESQ.
795 Parkway Avenue, Suite A-3
Trenton, NJ 08618
    Counsel for Plaintiff

MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.
By: Christian M. Scheuerman, Esq.
    Frances Wang-Deveney, Esq.
Cooper River West
6981 North Park Drive, Suite 300
Pennsauken, NJ 08109
    Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiff Brian Grimaldi, an inmate who suffers from

asthma, filed a two count Complaint on April 2, 2010 (Dkt. No.

1, "Compl.") against Defendants Corizon, Inc., f/k/a

Correctional Medical Services ("CMS") and Nurse Annie Grey

("Nurse Grey").  Plaintiff alleges a violation of his Eighth

Amendment right to be free from cruel and unusual punishment, in

the form of deliberate indifference to serious medical needs

1

(brought pursuant to 42 U.S.C. § 1983), and negligence.  (Compl. ¶ 1)  Present before the Court today is Defendants' motion for summary judgment (Dkt. No. 51).[1]

## I.    Relevant Facts

Plaintiff suffers from asthma.  On or about April 5, 2008, while Plaintiff was housed at the Central Reception & Assignment Facility ("CRAF") in Trenton, New Jersey, awaiting assignment to a specific state prison, he experienced difficulty breathing and received one treatment on a nebulizer machine from Nurse Grey. (Defs.' Statement of Material Facts Not in Dispute, Dkt. No. 51-3 ("DSOF") ¶¶ 7-10)  He returned to the infirmary later that night, around midnight, after Nurse Grey's shift was over, and received another breathing treatment from Nurse Beatrice Teel, which proved ineffective.  (Pl.'s Supp. Statement of Material Facts, Dkt. No. 53-2 ("PSSOF") ¶¶ 49, 51)  Plaintiff then became unresponsive and had no pulse.  (Id. ¶ 52)  He received CPR but was ultimately hospitalized with respiratory arrest and cardiac arrest and remained in the hospital for 12 days.  (DSOF ¶¶ 34-36, PSSOF ¶¶ 52-54)

In Plaintiff's extensive supplemental statement of facts, he asserts that he has had a long history of asthma, initially

---

[1] The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

2

diagnosed in 2000, that is more severe than average and is complicated by a history of emphysema and chronic obstructive pulmonary disease.  (PSSOF ¶ 2-4)  He has received emergency room treatment for asthma "[o]n many occasions prior to the incident in question," including while in custody at the Middlesex County Jail, prior to his arrival at CRAF, and these treatments typically "consisted of about five treatments on a nebulizer machine, which allowed him to breathe a mist for about an hour, followed by a shot of Prednisone or magnesium."  (Id. ¶¶ 5-7)  Medical personnel at CRAF were familiar with Plaintiff's asthma, and Plaintiff states that he received at least two breathing treatments in the days leading up to the incident in question.  (Id. ¶ 9, 16; DSOF ¶ 19)

No physicians were on duty at CRAF on weekends, but one was apparently on call at the time of the incident, which took place on a Saturday.[2]  (PSSOF ¶ 30)  CMS protocol provides that in an emergency, a nurse may "[c]arry out individualized physician order which may include nebulizer."  (Emergency Nursing Protocol, Dkt. No. 53-5 ("Protocol") at 6)  Nurse Grey did not have such an order from a nurse practitioner or doctor on April 5, 2008, but she did provide Plaintiff one nebulizer treatment.

---

[2] Plaintiff asserts in PSSOF ¶ 30 that the incident "began to unfold at about 4 p.m. on Friday, April 4, 2008, but other statements of fact in both parties' submissions refer to the incident occurring on Saturday, April 5, 2008. (*See e.g.*, DSOF ¶ 10; PRSOF ¶ 23)

(PSSOF ¶¶ 33-34)  There is no evidence that anyone at CMS contacted a physician for Plaintiff on the relevant date, prior to his hospitalization.

The parties agree that both Defendants acted under color of state law at all relevant times, as CMS contracted with the State of New Jersey to provide health and medical care for the Department of Corrections, and Nurse Grey was a registered nurse at CMS.  (DSOF ¶¶ 5-6)

Beyond these largely undisputed facts, there are several facts regarding the time between Plaintiff's first asthma treatment on April 5, 2008, and the time he became unresponsive shortly after midnight on April 6, 2008, that the parties dispute heavily.

First, the parties dispute Plaintiff's condition at the conclusion of the first treatment.  Defendants cite Nurse Grey's chart entry for April 5, 2008, which states:

> Lungs slightly congestion [sic] upon evaluation. [Plaintiff] exhibited no difficulty in breathing. Color was good with no cyanosis noted. Given one nebulizer treatment.

(DSOF ¶ 12)

Plaintiff, on the other hand, asserts that "the chart entry was incorrect regarding a lack of difficulty breathing, his 'good' color, and the condition of his lungs." (Pl.'s Resp. Statement of Material Facts, Dkt. No. 53-2 ("PRSOF") ¶ 12)  He

4

states instead that "Grey never listened to his lungs, and that his color was not good because he was panting and soaking-wet with sweat." (Id.) Moreover, Plaintiff asserts that Nurse Grey did not record the relevant entry in Plaintiff's chart until nearly a week after the incident and that numerous required entries such as Plaintiff's pulse, breath flow, and other vital signs were missing from the chart account. (PSSOF ¶¶ 57-58)

Even more significantly, the parties dispute whether Plaintiff requested additional care after receiving his first breathing treatment. Plaintiff asserts that he requested such assistance and Nurse Grey denied his requests. (DSOF ¶¶ 10-11, 22) Specifically, he states that he said, "Nurse, I can't breathe, I still need another breathing treatment," but she responded simply by unplugging the nebulizer machine and saying, "You're lucky you got that," referring to the one treatment she did give him. (PSSOF ¶ 36) When Plaintiff asked for a doctor, another nebulizer treatment, or Prednisone, a steroid to open up the lungs (Grimaldi Dep. Tr. 92:10, Dkt. No. 53-4 at 20), "Grey just turned and walked away." (PSSOF ¶ 38) After being sent back to his cell, Plaintiff asserts that he made a written request to see a doctor, noting "[o]n the form . . . 'I'm an asthmatic having hard time breathing need to see doctor ASAP.'" (PRSOF ¶ 23) Plaintiff also adds that later that evening, after

he showered, he still could not breathe but Nurse Grey "would not take him back at the infirmary." (PSSOF ¶ 45)

Defendants assert generally that Plaintiff was "sent back to his cell" after his first treatment "and never made another request to go back to the infirmary on April 5, 2008, for another breathing treatment." (DSOF ¶ 23)  However, Nurse Grey states that she has no specific recollection of seeing Plaintiff at all on the date in question and does not deny or admit any of his assertions. (PSSOF ¶ 40 (citing Grey Dep. Tr. 58:13-20, 65:2-4, 67:24-68:10, 74:22-23, Dkt. No. 53-4 at 65-67))

Officer Theodore Brown, the Correctional Officer on duty on April 5, 2008, who had escorted Plaintiff to the infirmary for his first breathing treatment, arranged for inmate "runners" or "trustees" to check on him "frequently" afterward. (DSOF ¶¶ 24, 26)  In his deposition, Officer Brown testified that he is an asthmatic himself and when Plaintiff was still "laboring" to breathe after his first treatment, he suggested to Plaintiff that he "stand in the shower with the hot water and let the steam, see if that will help." (Brown Dep. Tr. 28:13-20, Dkt. No. 51-6 at 52)  He advised Plaintiff to go to his cell, after he had showered, and "sit still." (Id. 28:22-25)

According to Officer Brown, the inmates acting as "runners" or "trustees" reported to him at all times, including at the very end of his shift around 10 p.m., that Plaintiff was

conscious and did not need additional medical assistance.  (DSOF
¶¶ 26, 31)  Officer Brown asked Plaintiff whether he should
"call a code," meaning issue a notification of a medical
emergency, and advised Plaintiff that calling such a code may be
"the only way you may get some medical treatment."  (Brown Dep.
Tr. 44:5 – 45:24, Dkt. No. 51-6 at 53-54)  Though Plaintiff
declined, Office Brown testified that he would have called a
code anyway if he "thought there was a serious issue with
[Plaintiff]."  (Id. 46:1-5; DSOF ¶¶ 28-29)  Officer Brown did
not call a code at the time, because Plaintiff "was still
conscious and breathing and . . . said he would be okay[.]"
(DSOF ¶ 30)

    Plaintiff does not dispute Officer Brown's testimony but
himself "has no recollection as to whether these events actually
occurred."  (PRSOF ¶ 28)  Plaintiff recalls that he submitted a
written request for medical treatment, but "[t]he next thing
that [he] remembers is waking up in a hospital."  (Id.)


## II.  Legal Standard

    "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999); *Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed Cir. 2001).  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986).  The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Id.*

### III. Discussion

Plaintiff alleges against both Defendants deliberate indifference to serious medical needs, pursuant to § 1983 and the Eighth Amendment of the Constitution, and negligence.

Defendants move for summary judgment on the grounds that (1) Plaintiff has not shown a policy or custom which violated

8

his Eighth Amendment rights[3]; (2) Plaintiff has not shown that
Nurse Grey was deliberately indifferent to his medical needs,
even if his facts are accepted as pled; (3) Plaintiff's state
law claims have not satisfied the requirements of Title 59,
which require Plaintiff to file a Notice of Tort Claim within 90
days of the accrual of his cause of action; (4) the Eleventh
Amendment bars Plaintiff's § 1983 suit on sovereign immunity
grounds; (5) Plaintiff is not entitled to punitive damages; and
(6) Plaintiff is not entitled to an attorneys' fee award for a
negligence claim.  (Defs. Br. Supp. Mot. for Summ. J., Dkt. No.
51-4 ("DMSJ"))

Plaintiff concedes Defendants' first point (Pl. Opp. Br.,
Dkt. No. 53 at 6) and their sixth point (Pl. Opp. Br. at 20).
The Court will therefore grant summary judgment in Defendants'
favor on Plaintiff's § 1983 claim of deliberate indifference
against CMS and on Plaintiff's request for an attorneys' fee
award for his negligence claims.  The Court also finds that
Defendants have conceded their third point relating to the

---

[3] "[A] § 1983 claim cannot be grounded in a theory of respondeat superior" but
must instead "assert that [defendant] had any policy, practice, or custom
which led to [plaintiff's] alleged injury, or had any direct involvement in
the alleged wrongful conduct."  *Weigher v. Prison Health Servs.*, 402 F. App'x
668, 669-70 (3d Cir. 2010) (upholding dismissal of § 1983 claim of deliberate
indifference against a private corporation providing health care services at
prison).  Plaintiff has asserted neither here.

requirements of Title 59[4] and will therefore deny their motion for summary judgment on that basis.

The remaining issues, therefore, are Defendants' contentions that (1) Plaintiff has failed to provide sufficient evidence that Nurse Grey was deliberately indifferent to Plaintiff's medical needs; (2) the Eleventh Amendment bars suit against Defendants, because CMS is an "arm of the state"; and (3) Plaintiff has failed to show sufficient evidence to support a punitive damages award.

The Court considers each of these arguments in turn, including whether the facts that are disputed are material to Defendants' motion.

## A. Deliberate Indifference to Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations and quotation marks omitted). The two-pronged standard to show such indifference requires that the prisoner's medical needs be serious and that prison officials be

---

[4] Defendants moved for summary judgment on Plaintiff's negligence count on the grounds that Plaintiff had failed to file a Notice of Tort Claim within 90 days of the accrual of the cause of action, as required by N.J.S.A. § 59:8-8(a). (DMSJ at 10) Plaintiff submitted proof of satisfying this requirement (PRSOF ¶ 2 (citing Pl. Opp. Br. at Exhibits 1-6, Dkt. Nos. 53-3 and 53-4)), and Defendants have not pursued the issue.

deliberately indifferent to such needs. *Id.* Because there is
no dispute that Plaintiff's medical need was serious, the Court
focuses its inquiry on whether Nurse Grey was deliberately
indifferent to it.

"Where prison authorities deny reasonable requests for
medical treatment . . . and such denial exposes the inmate to
undue suffering or the threat of tangible residual injury . . .
deliberate indifference is manifest." *Monmouth*, 834 F.2d at 346
(internal citation and quotation marks omitted). Deliberate
indifference also occurs "where knowledge of the need for
medical care [is accompanied by the] . . . intentional refusal
to provide that care." *Id.* at 346-47. Plaintiff must therefore
show that he requested medical treatment that was reasonable,
that Nurse Grey had knowledge of the need, and that Nurse Grey
nonetheless intentionally refused or delayed necessary care.

First, Plaintiff has asserted sufficient evidence to
conclude that a request for an additional nebulizer treatment
was reasonable, as he typically needed multiple nebulizer
treatments, one after another, to stabilize during his emergency
room visits. (PSSOF ¶ 7 (citing Grimaldi Dep. Tr. 92:1 – 93:2,
159:6-12, Dkt. No. 53-4 at 20))

Plaintiff has also presented sufficient evidence that Nurse
Grey had knowledge of his medical need and the specific care
that would address that need. CMS protocol provides, among

11

other things:  "Asthma can be a life-threatening condition. **(Inmates should not be sent back to cell without physician being notified).**"  (Protocol at 7)(emphasis in original)  In addition, accepting Plaintiff's version of events, he was visibly having trouble breathing after the first treatment and requested a doctor, an additional nebulizer treatment, or Prednisone as treatment.  To the extent Defendants dispute this version, there remains a genuine issue of material fact that precludes summary judgment.

Finally, Plaintiff has provided sufficient evidence that Nurse Grey, despite her knowledge of Plaintiff's need and the required care, *intentionally* refused his reasonable requests for additional breathing treatments, a physician, or a steroid. Nurse Grey allegedly commented that Plaintiff was lucky to have received the one treatment she gave him, and she sent him back to his cell without notifying a physician, in violation of CMS protocol, and in spite of both his request for a doctor and his continued difficulty breathing.  A rational jury could infer from these facts that Nurse Grey's actions subjected Plaintiff to "undue suffering" and "tangible residual injury" and conclude that she was deliberately indifferent to his needs.

Defendants rely here on "the well-established principle that 'a court will generally not find deliberate indifference when some level of medical care has been offered to the

12

inmate.'"  (Defs.' Reply at 5 (*quoting Christy v. Robinson*, 216
F. Supp. 2d 398, 413-414 (D.N.J. 2002))).  However, the
provision of *some* medical care does not thwart a deliberate
indifference claim where that care was clearly inadequate.
*Monmouth*, 834 F.2d at 346 (citing *Robinson v. Moreland,* 655 F.2d
887, 889-90 (8th Cir. 1981) (upholding jury's finding of
deliberate indifference where prison guard knew medical care was
needed for inmate's fractured hand but provided only an ice-
pack)).  Even "[s]hort of absolute denial, if necessary medical
treatment [i]s . . . delayed for non-medical reasons, a case of
deliberate indifference has been made out."  *Id.*

> Instances of such treatment include cases where the
> decision to pursue a course of treatment is based
> primarily on non-medical reasons, such as a
> prisoner's inability or unwillingness to pay, or
> where a medical official has denied the requested
> treatment with the intention of inflicting pain.
> *See e.g., Rouse v. Plantier,* 182 F.3d 192, 197 (3d
> Cir.1999); [*White v.*] *Napoleon,* 897 F.2d [103] at
> 109 [(3d Cir. 1990)] (citing examples such as
> leaving Debrox in the ear of one prisoner when there
> is no legitimate medical reason for doing so or
> denying Maalox and increasing risk of peptic ulcer
> based on inappropriate non-medical
> considerations).

*Christy*, 216 F. Supp. at 414.

Here, Nurse Grey provided one nebulizer treatment but
refused to provide a second.  No doubt the provision of one
nebulizer treatment was temporarily more helpful than none at
all, but the need to breathe, unlike some physical injuries,

13

does not heal or diminish with time.  The urgency and necessity of continuing to breath are self-evident, as are the potential consequences of delay or refusal of treatment.  At the very least, a genuine issue of material fact remains as to whether Nurse Grey's alleged comment and actions reflect an indifference to that urgency that evidences an intentional delay or refusal of further treatment for non-medical reasons.  Consequently, Defendants' motion for summary judgment on Plaintiff's § 1983 claim against Nurse Grey will be denied.

**B. Eleventh Amendment Immunity**

The Eleventh Amendment shields states and state actors from suit by individuals absent their consent. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996)).  However, this immunity is limited "only to States or governmental entities that are considered 'arms of the State[.]'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).

> Against this backdrop, the Third Circuit has iterated several factors to be considered in analyzing an entity's status as 'an arm of the state' entitled to Eleventh Amendment immunity. The 'most important' of these factors is whether 'any judgment [against the entity] would be paid from the state treasury.' *See Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority,* 103 F.3d 1165, 1173 (3d Cir. 1997) (citation omitted). Other factors are the degree of autonomy the agency has, and the status of the agency under state law, for example, whether the entity is separately incorporated, can be sued in its own right, or is immune from state taxation. *Id.* (citations omitted).

14

*Austin v. Taylor*, 604 F. Supp. 2d 685, 688-89 (D. Del. 2009).

Here, Plaintiff has brought suit against Nurse Grey in her personal capacity only (Pl. Opp. Br. at 16), to which the Eleventh Amendment does not apply.[5]  Though the Court has dismissed Plaintiff's § 1983 suit against CMS for other reasons (see note 3, *supra*), the parties do not dispute that CMS, a private entity, qualifies as a state actor for § 1983 purposes. The only question remaining then is whether such qualification entitles CMS to immunity from Plaintiff's negligence claim pursuant to the Eleventh amendment.[6]

In support of its position that CMS is entitled to Eleventh Amendment immunity, Defendants cite to two cases: *Castillo v. Costan*, Civ. No. 04-210-GMS, 2006 WL 891141, *3 (D.Del. Mar. 31,

---

[5] Defendants argue that Plaintiff's § 1983 claim against Nurse Grey fails on immunity grounds, because Plaintiff articulated a claim against Nurse Grey in her official capacity only, not her personal capacity.  However, the Court has already ruled that Plaintiff has pled a claim against Nurse Grey in her individual capacity.  *See* Order Denying as Moot Pl. Mot. to Amend Compl., Dkt. No. 57, dated Dec. 4, 2014.  To the extent that Plaintiff pled a claim against Nurse Grey in her official capacity, the Court considers that claim withdrawn, per Plaintiff's briefing: "Nurse Grey is being sued in her personal capacity, not in her official capacity."  (Pl. Opp. Br. at 16)

[6] Though Defendants do not raise the issue, the Court notes that Nurse Grey is also not entitled to qualified immunity from suit in her personal capacity. *See Hasher v. Hayman*, No. 08-4105 (CCC), 2013 WL 1288205, at *9 (D.N.J. Mar. 27, 2013) (rejecting qualified immunity for CMS Defendants from suit under § 1983)(*citing Richardson v. McKnight*, 521 U.S. 399 (1997) (finding that private prison guards do not enjoy qualified immunity from § 1983 suits because they have not historically enjoyed such immunity, are not covered by the purpose of such immunity, and are subject to ordinary market pressures that relieve the need for such immunity); *McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012) (rejecting qualified immunity for private psychiatrist providing services to inmates as employee a private entity)).

2006) and *Hamilton v. Civigenics*, Civ. No. 03-826-GMS, 2005 WL
418023, *4 (D.Del. Feb. 22, 2005). (Defs.' Reply Br., Dkt. No.
54 ("Defs.' Reply") at 13-14) In those two opinions, the
Delaware district court found Civigenics and its employees to be
state actors because they "are employed by the State of Delaware
to provide treatment of inmates and, therefore, acted under
color of law for purposes of § 1983 when undertaking their
duties in treating the plaintiffs' addictions." *Hamilton*, 2005
WL 418023 at *4 (cited by *Castillo*).

However, CMS cited the same cases before the *Austin* court,
which observed that "[t]he court in *Hamilton* (and *Castillo*) did
not conduct the type of analysis of whether Civigenics was an
'arm of the state' as mandated by the Third Circuit in
*Independent Enterprises Inc*." 604 F. Supp. 2d at 689. Applying
the *Independent Enterprises* analysis, *Austin* concluded that CMS
did not qualify as an arm of the state:

> CMS has neither asserted nor demonstrated that any
> judgment [against it] would be paid from the state
> treasury. . . . CMS is a corporate entity; there
> is no indication that CMS is immune from state
> taxation or that CMS does not act autonomously. .
> . . CMS has provided no evidence or argument in
> this regard and has failed to meet its burden to
> establish that it is an arm of the state[.]

*Id.* (quotation marks and citations omitted).

This Court sees no reason to depart from the conclusion in
*Austin*. CMS has presented no evidence that any of the factors

16

have changed or should be weighed differently.  Defendants cite
to *Hoag v. Brown*, 397 N.J. Super. 34, 48-49 (App. Div. 2007) for
language showing "an intertwined relationship" between CMS and
the New Jersey Department of Corrections (i.e.: the State) (DMSJ
Br. at 14), but this case conducts its analysis "to determine
whether an employer/employee relationship exists for purposes of
bringing a hostile work environment claim," *Hoag*, 397 N.J.
Super. at 48.  *Hoag* does not consider any questions of Eleventh
Amendment immunity and therefore does not apply the factors
outlined by the Third Circuit in *Independent Enterprises* either.[7]
Under those factors, CMS is not entitled to Eleventh Amendment
immunity, and Defendant's motion for summary judgment on
immunity grounds will therefore be denied.

**C. Punitive Damages**

   "In a § 1983 action, '[A] jury may be permitted to assess
punitive damages . . . when the defendant's conduct is shown to
be motivated by evil motive or intent, or when it involves
reckless or callous indifference to the federally protected
rights of others.'"  *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823,
833 (3d Cir. 1994) (*quoting Smith v. Wade*, 461 U.S. 30, 56
(1983)).

---

[7] Defendants' citation to *King v. Dep't of Corr.*, 2008 N.J. Super. Unpub.
LEXIS 2771 (App. Div. 2009) (Reply Br. at 15) is similarly inapposite.

17

As discussed, Plaintiff has asserted sufficient evidence, viewed in the light most favorable to him as the non-moving party, for a jury to conclude that Nurse Grey acted with deliberate indifference to Plaintiff's serious medical needs. Having met that standard, Plaintiff's claim for punitive damages necessarily also makes the requisite showing of "reckless or callous indifference" to preclude summary judgment on his claim for punitive damages. *See In re Bayside Prison Litig.*, 331 F. App'x 987, 993 (3d Cir. 2009) ("[S]ufficient evidence supported the jury's determination that [Defendant] acted with deliberate indifference.  Accordingly, the imposition of punitive damages was not improper.")(*citing Farmer v. Brennan*, 511 U.S. 825, 836 (1994) ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.")).

Defendants' motion for summary judgment on Plaintiff's punitive damages claim will therefore be denied.

## IV.  Conclusion

For the reasons set forth above, the Court will grant summary judgment in Defendants' favor on Plaintiff's § 1983 claim against CMS and on Plaintiff's request for an attorneys' fee award for his negligence claims.  Otherwise, Defendants'

18

motion will be denied.  An appropriate Order accompanies this

Opinion.

Date: 6-12-2015

_____s/ Joseph E. Irenas_____
**JOSEPH E. IRENAS, S.U.S.D.J.**

19